ARASTO FARSAD (SBN: 273118)
NANCY WENG (SBN: 251215)
FARSAD LAW OFFICE, P.C.
2905 Stender Way, Suite 76
Santa Clara, CA 95054
Telephone: 408-641-9966
Fax: 408: 866-7334
FarsadLaw1@gmail.com
nancy@farsadlaw.com

Attorney for Debtor(s)

# UNITED STATES BANKRUPTCY COURT
# NIORTHERN DISTRICT OF CALIFORNIA

In re:

David R. Foley

Debtor(s).

Case No. 18-52539 MEH
Chapter 13

OPPOSITION TO MOTION FOR REVIEW AND DISGORGEMENT OF ATTORNEY'S FEES

Hearing Date: January 25, 2019
Hearing Time: 10:00 a.m.
Judge: Hon. M. Elaine Hammond
Place: 280 S. First Street, Courtroom 3020
San Jose, CA 95113

COMES NOW, David R. Foley (the "Debtor"), through his counsel, Nancy Weng, of the FARSAD LAW OFFICE, P.C., and hereby opposes the Chapter 13 Trustee's Motion for Review and Disgorgement of Attorney's Fees. This Opposition is supported by the Declaration of Nancy Weng and the Debtor, David R. Foley.

## I. INTRODUCTION

On or about November 13, 2018, Debtor retained the Farsad Law Office, P.C. (the "Firm") to file an emergency Chapter 13 to stop the non-judicial foreclosure sale of his residence located at 311 Santa Rosa Drive, Los Gatos, CA 95032 (the "Property").[1]

---

[1] Although the petition was filed on November 14, 2018 under Nancy Weng of Tsao-Wu & Yee, LLP, this was in error from the Best-Case Program. A Change of Address Form was filed the same day of the "skeletal petition"

The Debtor has approximately $700,000 in equity in the Property. The Debtor's goal in filing for bankruptcy protection was to reinstate the loan with funding prior to foreclosure; to do so, Debtor needed time. The Firm filed an emergency skeletal petition in order to stop the foreclosure sale. Counsel stayed in the office with the Debtor until 9 p.m. to prepare the skeletal filing (as he contacted the Firm in the afternoon on the day prior to the scheduled foreclosure sale) to prevent foreclosure of his Property.

At the time of the emergency filing, the exact amounts owed by the Debtor were unknown. It was not until the filing of the balance of the schedules (after receipt of all of the Debtor's financials) on December 10, 2018, that it was revealed that the Debtor actually owed a balance on the Property over 109(e) limits. At this time, counsel discussed with the Debtor the 109(e) problem and possible conversion of the case to one under Chapter 11 as the Debtor would not be able to continue with the Chapter 13. Debtor's counsel discussed reinstatement of the subject delinquent first mortgage loan in lieu of the Chapter 11 as well.

II.  **HISTORY OF THE CASE AND THE DEBTOR'S HARDSHIP THAT CAUSED THE INSTANT FILING**

The Debtor's income is derived from a company named NanoTech ("NTEK") which turns old videos/movies into current technology 4D. When the Debtor started with NTEK in 2017, NTEK was close to obtaining necessary funding in April 2017 after it signed a deal with Bridgeport, an investment firm. Unfortunately, Bridgeport suffered several delays in obtaining funding. Due to these delays, the Debtor has been unable to cash his paychecks from NTEK. NTEK currently owes Debtor $530,000 in back pay as well as a significant amount of monies for costs and expenses Debtor incurred.

In addition, the Debtor has several million options and shares of NTEK stock that he has been unable to sell due to several issues arising from NTEK's failure to procure funding in a timely manner. The Debtor had originally planned on $35,000 in monthly income from the liquidation of his shares, but has not been able to sell any shares since 2017. NTEK has sought

---

under Docket No. #6. The case was filed under Nancy Weng, but of Farsad Law Office, P.C., and not Tsao-Wu & Yee, LLP, counsel's previous firm (See #16 of the Statement of Financial Affairs filed on December 10, 2018 under Docket No. #21).

alternative investors/funding as they can no longer rely on Bridgeport. Bridgeport continues to claim that they are only days away from being funded. However, due to the long delays, the Debtor is seeking funding from an alternative source: The Bank of Rome. The bank initially accepted the deal, but required some time to perform its due diligence by conducting audits of NTEK to affirm valuation. Debtor has been informed that The Bank of Rome anticipates that they will have closing documents to sign by January 31, 2019. The Debtor will either reinstate his loan in full or will convert the instant case to one under Chapter 11 if neither Bridgeport or The Bank of Rome closes the deal with NTEK.

### III. ARGUMENT

**a. THE DEBTOR RECEIVED THE REASONABLE VALUE OF SERVICES PURSUANT TO 11 U.S.C. §329 AND THE SERVICES BENEFITING THE DEBTOR'S ESTATE**

11. U.S.C. § 329 provides, in pertinent part, that "if a [a debtor's attorney's] compensation exceeds the reasonable value of [the services provided], the court may…..order the return of any such payment, to the extent excessive…."

Here, the Debtor came into the firm's office on the eve of foreclosure. Had his Property been foreclosed, the Debtor would have lost his Property as well as $700,000 in equity. The auction was alive and well-set for 9:00 a.m. the following day. Counsel stayed late in the office until 9 p.m. to ensure that the skeletal filing would be prepared to be filed at 8:00 a.m. the next morning. The Debtor paid the firm $2,155 (less than the entire no-look fee schedule in San Jose). Given that the Debtor received the benefit of saving his Property from foreclosure with his good faith intentions to reinstate his loan, the Debtor received more than reasonable value of the services provided. Counsel's normal billing rate is $300.00. The hours spent on this case thus far is:

| Date | Event | Hours | Total |
|---|---|---|---|
| 11/13/2018 | Consult/skeletal petition preparation | 1 | 300 |
| 11/28/18 | Draft ex parte motion to extend time to file balance of schedules | .3 | 90 |

| Date | Description | Hours | Amount |
|---|---|---|---|
| 11/30/2018 | Review title report through third company for amount owed - $60 cost | 1.2 | 360 |
| 12/09/2018 | Review proof of claims filed | .3 | 90 |
| 12/10/2018 | Draft balance of schedules | 1.5 | 450 |
| 12/10/2018 | Review and sign with Debtor balance of schedules | 2 | 600 |
| 12/18/2018 | Meet with Debtor regarding conversion | 1 | 300 |
| 12/28/2018 | Review Trustee's Disgorgement Motion | .5 | 150 |
| 1/7/2019 | Respond to Trustee's Motion to Disgorge and declarations | 3 | 900 |
| Total | | 10.8 | 3,240 |

     The Debtor has received reasonable value of services. By filing the bankruptcy petition, the Debtor stayed a foreclosure sale and prevented the loss of hundreds of thousands of dollars worth of equity in foreclosure. The bankruptcy is giving the Debtor time to either reinstate his loan and become current, or convert to Chapter 11. Counsel has worked diligently with the Debtor to discuss his options to save his Property. At present, if charging by the regular rate, the Debtor would have spent $3,240.00 Instead, the Debtor has only paid $2,155.00 Therefore, the Debtor has received the reasonable value of services for which he paid and disgorgement is inappropriate and unwarranted.

The Trustee's Application for Disgorgement cites *Hale v. United States Trustee (In re Basham),* 208 B.R. 926, 931 (9th Cir. B.A.P. 1997) as setting forth the standard by which a court should determine reasonableness of fees and in support of the Trustee's Application. However, the facts in *Hale* are completely inapposite to the instant facts in this case. The only service attorney Hale provided to Debtors was completion of a Chapter 7 bankruptcy petition (not a Chapter 13) that was <u>incomplete and erroneous</u> and requiring extensive amendments. The *Hale* attorney also had the Debtors file Pro Per in their case. Hale failed to inform Debtors about the bankruptcy process, obtain their informed consent to his limited representation, or notify them about the impending meeting of creditors (or provide any other necessary information to the Debtors, for that matter). Instead, Hale attempted to persuade them to dismiss their petition without explaining why or how it would affect their rights. Debtors ultimately paid $1000.00 to correct and supplement the work that Hale performed. The bankruptcy court did not abuse its discretion in disgorging Hale of his attorney fees.

None of the facts in *Hale* apply to this case. Counsel submitted the petition to the Court for the Debtor as an emergency filing on the eve of foreclosure. Because of the complex nature of the Debtor's case and in order to perform due diligence, Counsel obtained an Order to Extend Time to file the balance of the schedules in order to:

1) obtain more information and review Debtor's financials in detail;
2) contact the IRS/FTB to obtain tax transcripts;
3) run its own preliminary title report for the Debtor's Property and paid $60 out of pocket to determine the amount of the claims and research the possibility of other liens;
4) file the balance of the petition; and
5) have a lengthy meeting with the Debtor to explain the different chapters of bankruptcy and options available to the Debtor. (e.g., Counsel explained a "worst case scenario" of a "sale" plan option in a Chapter 11 in order to not lose $700,000 in the Property's equity)

As a result, the Debtor was able to save his home and have the time to either reinstate his loan or convert to a Chapter 11. The estate benefitted by the bankruptcy filing because of the significant equity in the Debtor's home that was saved.

## IV. CONCLUSION

As indicated above, in after-hours, emergency consultation, Counsel demonstrated unparalleled professionalism procuring the essential information to act completely in her client's interest. Counsel obtained *de minimus* information to protect Debtor's Property from non-judicial foreclosure and a potential loss of $700,000 in the Property's equity. Debtor's counsel filed a "skeletal" petition and then followed with the appropriate, diligent research to provide Debtor with all the options the Bankruptcy Code (as well as California non-judicial foreclosure law) provides to him. Counsel undoubtedly provided reasonable value of services.

These facts combined with the Chapter 13 Trustee's misapplication of case law to the instant case, compel the Debtor to request the Chapter 13 Trustee withdraw its Motion or, in the alternative, request the Court to deny the Chapter 13 Trustee's Motion for Review and Disgorgement of Attorney's Fees.

Dated: January 9, 2019

/s/ Nancy Weng
Nancy Weng, Esq.
Attorney for Debtor